## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————

LANCELOT ENTERTAINMENT ) 
BOSTON, LLC, as successor in interest ) 
to KING'S FAIRE, Inc. ) 
                 Plaintiff, )     Case No. 1:25-cv-10479-AK 
     ) 
    v. )     **ORAL ARGUMENT REQUESTED** 
     ) 
ALPHONSE A. D'AMICO, SR., ) 
Individually and as Trustee of the ) 
Renaissance Nominee Trust, ) 
     ) 
                 Defendant. ) 
—————————————————————

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT IN ITS ENTIRETY

Pursuant to Fed. R. Civ. 12(b)(1), 12(b)(6) and Local Rule 7.1, Defendant Alphonse A. D'Amico, Sr. ("D'Amico") – who will shortly celebrate his 97th birthday – individually and as trustee of the Renaissance Nominee Trust, through counsel, moves to dismiss Plaintiff Lancelot Entertainment Boston, LLC's ("Lancelot") Second Amended Complaint. Despite amending its complaint twice already, the pleading remains deficient and should be dismissed in its entirety.

As detailed more fully below, Lancelot's Lanham Act claims (Counts I and II) (the "Lanham Act Claims") – the only basis for asserting federal jurisdiction – must be dismissed under Rule 12(b)(6) because Lancelot does not allege – and cannot allege – a required element of trademark infringement and false designation of origin/unfair competition under 15 U.S.C. §§ 1114 and 1125, namely, that D'Amico has made any *use in commerce* of an any mark or other designation *on or in connection with any goods or services*.

Upon dismissal of the Lanham Act Claims, the Court should dismiss the remaining state law claims under 28 U.S.C. § 1338 because there is no longer a substantial claim under the

Lanham Act or any remaining unfair competition claim.  Further, the Court should, in its

discretion, decline to exercise supplemental jurisdiction under 28 U.S.C. §§ 1338 and 1367 over

the remaining state law claims (Counts III to VI).  This case is still in its infancy and no

discovery has been served or taken.  The Court has not set a date for an initial scheduling

conference.  With no viable federal cause of action, comity, judicial economy, convenience, and

fairness favor dismissal of the remaining state law claims.  Finally, to the extent the Court is

inclined to retain supplemental jurisdiction over the remaining state law claims – which it should

not – the Court should dismiss the state law claims pursuant to Rule 12(b)(6).

### RELEVANT FACTUAL BACKGROUND[1]

For 25 years, King's Faire, Inc. ("King's Faire") leased land from D'Amico, as Trustee of

Renaissance Nominee Trust and not individually, (the "Premises") to operate King Richard's

Faire in Carver, Massachusetts pursuant to a written lease dated as of January 1, 2000 (the

"Lease").  Dkt. 26 (Sec. Am. Compl.) ¶¶ 8-9, n.1.  In August 2024, "[Lancelot] purchased

[King's Faire] and was assigned the Lease" and Lancelot and D'Amico continued to operate

under the Lease through its expiration in December 2024.  Sec. Am. Compl ¶ 11.  Lancelot

---

[1] D'Amico accepts as true the allegations pled by Lancelot in the Second Amended Complaint solely for purposes of this motion.  Notably, Lancelot's allegations in the Second Amended Complaint omit critical facts relevant to why the Lease that *Lancelot allowed to expire on December 31, 2024* was not renewed, including that Lancelot sought to inject wholly inappropriate terms into the lease, such as non-solicitation and non-compete clauses.  Further, Lancelot grossly misrepresents the move-out process that D'Amico permitted more than three months after Lancelot allowed its Lease to expire.  The move was negotiated entirely through counsel for the parties – not between D'Amico and Lancelot directly.  Lancelot unreasonably asked for three weeks of unfettered access every day at all hours of the day to access the Premises, for which it no longer holds a lease.  Had Lancelot's counsel indicated that Lancelot needed additional days for certain of its vendors to remove its property, D'Amico's counsel request would have been granted.  There was no need – as Lancelot claims – to "bend[] over backwards" to remove items from the Premises.  Further, it was Lancelot – not D'Amico or his counsel – that provided notice to its vendors.  D'Amico was in no way involved in these communications.  Any issues that Lancelot may have with its vendors is of its own making.  D'Amico reserves all rights and will deny or otherwise challenge the purported facts pled to the extent the Court does not grant this motion.

contends that "[a]fter months of delay tactics and false reassurances, Lancelot was blindsided on February 20, 2025, when D'Amico abruptly terminated lease negotiations" claiming that "[w]hile pretending to work towards a lease renewal, he was secretly orchestrating a competing enterprise, aiming to dismantle Lancelot's operations from within" and that "[h]is true objective was not to renew or amend the lease but to stall, obstruct, and sabotage Lancelot's business long enough to prevent it from stopping him." *Id.* at ¶ 16. Notably, *the Lease expired by its own terms in December 2024. Id.* at ¶ 11. Notably, Lancelot does not plead – nor could it plead – the existence of a non-competition or non-solicitation clause or any other restriction on what D'Amico may do with the Premises after the Lease expired.

With respect to the Lanham Act Claims, there is no allegation in the Second Amended Complaint that D'Amico has made *any use of any mark or other designation in commerce on or in connection with any goods or services*, which is a required element of these claims. *See generally id.* Rather, Lancelot merely alleges that: (1) D'Amico purportedly – in a verbal statement – told Lancelot's unidentified "builder" that "there WILL be a Faire on the property; it just might not be called King Richard's Faire;" and (2) that a new entity called "Camelot Renaissance Village" was registered with the Secretary of the Commonwealth of Massachusetts with D'Amico's niece, Elisa D'Amico, listed as the registered agent."[2] *Id.* at ¶¶ 14 and 18. In the Second Amended Complaint, Lancelot newly alleges – presumably in a desperate, yet failed, attempt to save its Lanham Act claims – that "despite the limitless other marks that D'Amico could have chosen, he wrongfully appropriated the Trademarks by representing to others that he

---

[2] Lancelot claims that on February 27, 2025, "camelotrenassancevillage.com" was registered as a domain name, but never alleges that it was D'Amico who registered the domain name. Sec. Am. Compl. ¶ 24. Neither D'Amico nor anyone acting on his behalf registered this domain – a fact that D'Amico's counsel has conveyed to Lancelot's counsel on more than one occasion.

will be running the King Richard's Faire at his Property." *Id.* at ¶ 53.  None of these purported

actions constitutes use in commerce of a mark or other designation on or in connection with

goods or services sufficient to state valid claims under the Lanham Act.

Unrelated to the Lanham Act Claims, Lancelot alleges in highly conclusory fashion, with

no specificity and purely as speculation, D'Amico "repeatedly contacted [the] Town of Carver

permitting authorities, Lancelot's insurance providers, and Lancelot's vendors, attempting to

extract sensitive details for his own benefit," "resorted to coercive threats against Lancelot's

caretaker, attempting to gain unauthorized access to Lancelot's property through intimidation,"

"spread falsehoods to third parties," "attempted to recruit other local faire operators to replace

Lancelot," "blatantly misrepresented his authority to Lancelot's insurer, falsely claiming he was

authorized to obtain King Richard's Faire's confidential insurance information," and "approach

multiple municipal departments – including permitting, the board of health, and tax assessors –

falsely stating that he would be operating King Richard's Faire for the 2025 season." *Id.* at ¶¶

17, 22, 23.

Based on the highly speculative, non-specific actions attributed to D'Amico's, Lancelot

commenced this action on February 27, 2025, asserting claims for false designation of

origin/unfair competition under 15 U.S.C. § 1125(a), breach of the implied covenant of good

faith and fair dealing, violation of Chapter 93A, tortious interference with business relations,

tortious interference with contractual relations, fraud, conversion, and request for permanent

injunctive relief.  Dkt. 1 (Compl.).  In the Complaint, Lancelot asserted original jurisdiction

under 28 U.S.C. §§ 1131 and 1338 because the action arises under the trademark laws of the

Lanham Act." *Id.* at ¶ 3.  Lancelot tries to assert federal jurisdiction over the state law claims

under 28 U.S.C. §§ 1338 and 1367.[3]  *Id.* at ¶ 4.  Before D'Amico's deadline to respond to the

original complaint, D'Amico filed an Amended Complaint on March 13, 2025 to add a claim for

trademark infringement under 15 U.S.C. § 1114, asserting the same basis for jurisdiction as

asserted in the Complaint.  Dkt. 17 (Am. Compl.) ¶¶ 3 and 4.

On March 4, 2025, the parties jointly requested entry of an agreement that allowed

Lancelot to enter the Premise in an orderly fashion to retrieve their business records and other

personal property, which the Court granted as an order on the same day.  Dkts. 12 and 13.  On

April 4, 2025, the parties joint filed a proposed agreement in which D'Amico "agree[d] to not

operate, host, sponsor, promote, lease, license, advertise, or otherwise permit the operation of a

Renaissance Festival" at the Premises for 2025 or "knowingly solicit, attempt to solicit, or

communicate for a competitive purpose with any vendors, insurers, contractors, performers,

suppliers, or other business affiliates D'Amico knows to be associated with Lancelot's operation

of its business or its Renaissance Festival."  Dkt. 22 at Exh. 1.

Following the removal of its personal property from the Premises, Lancelot filed the

Second Amended Complaint on April 22, 2025.  Dkt. 26.  The Second Amended Complaint

asserts the same basis for jurisdiction as the Complaint and Amended Complaint, Sec. Am.

Compl. ¶¶ 3-4, and removes the claims for breach of the implied covenant of good faith and fair

dealing, fraud, and conversion.

D'Amico now moves to dismiss the Second Amended Complaint in its entirety.

---

[3] Notably, there is no diversity jurisdiction over the action under 28 U.S.C. § 1332 and Lancelot does not
contend otherwise.  Sec. Am. Compl, ¶¶ 1-2; *see Pramco, LLC ex rel. CFSC Consortium, LLC v. San
Juan Bay Marina, Inc*., 435 F.3d 51, 54 (1st Cir. 2006) ("[l]imited liability companies are unincorporated
entities" and "[t]he citizenship . . . is determined by the citizenship of all of its members").

## ARGUMENT

### I.    RULE 12(b)(6) LEGAL STANDARD.

Pursuant to Fed. Rule Civ. P. 8(c), "'a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Pereyra v. Sedky*, 148 F. Supp. 3d 134, 140-41 (D. Mass. 2015) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir.2015) (quoting Fed. R. Civ. P. 8(a)(2))).   Importantly, "[t]his pleading standard requires 'more than labels and conclusions,' . . . and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 141 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "Rather, a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"When evaluating the sufficiency of a complaint, the Court 'first must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.*   (quoting *Cardigan Mountain Sch.*, 787 F.3d at 84 (citations omitted)).   "'Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Garcia-Catalán v. U.S.*, 734 F.3d 100, 103 (1st Cir.2013) (citations omitted)); *see Soto-Torres v. Fraticelli*, 654 F.3d 153, 156 (1st Cir. 2011) (the court need not "accept the complaint's legal conclusions or naked assertions devoid of further factual enhancement").   "[T]he Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to [Lancelot's] theory, drawing all reasonable inferences in favor of [Lancelot]." *Pereyra*, 148 F. Supp. 3d at 141 (citations omitted).

Notably, "[a] 'primary purpose' of a motion to dismiss under [Rule 12(b)(6)] 'is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win.'" *Id.* (quoting *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir.2014). To that end, "'[a] suit will be dismissed if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* (quoting *U.S. ex rel. Hutcheson v. Blackstone Med., Inc*., 647 F.3d 377, 384 (1st Cir.2011) (internal citations omitted)). "Dismissal is also appropriate when a document referenced in the complaint 'reveals facts which foreclose recovery as a matter of law.'" *Id.* (quoting *Correa de Jesus v. U.S.*, 923 F.2d 840 (1st Cir.1990) (unpublished) (citing *Assoc. Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974))).

## II.    THE LANHAM ACT CLAIMS FAIL UNDER RULE 12(b)(6) BECAUSE LANCELOT FAILS TO ALLEGE ANY USE BY D'AMICO IN COMMERCE ON OR IN CONNECTION WITH ANY GOODS OR SERVICES.

"[T]o succeed on the merits of its claims of trademark infringement [under 15 U.S.C. § 1114] and false designation of origin and unfair competition under [15 U.S.C. § 1125(a) of] the Lanham Act, . . . [Lancelot] must prove (1) the mark is entitled to trademark protection, and (2) *use by another in commerce* that is likely to cause confusion as to the source or sponsorship *of the goods or services*." *Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219, 226 (D. Mass. 2011) (emphasis added); *see* J. Thomas McCarthy, 3 *McCarthy on Trademarks and Unfair Competition* § 25:54 (5th ed.) ("an allegation of infringement under the Lanham Act of either a registered or unregistered mark is defective if it does not allege an effect on interstate or foreign commerce").

For a claim for infringement of a federally registered mark under 15 U.S.C. § 1114, the accused use needs to be a "use in commerce" and "in connection with the sale, offering for sale,

distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1)(a). For a claim of infringement of an unregistered mark (false designation of origin) under 15 U.S.C. § 1125(a), the accused use needs to be a "use in commerce" and "any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . ." as to the affiliation, connection, or association, or origin, sponsorship, or approval of the accused's "goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1).

Here, the Lanham Act Claims fail to state a claim upon which relief can be granted because there is no allegation – nor could there be – that D'Amico has made *any use in commerce* of any mark, word, symbol, or any other designation *on or in connection with any good, service, or commercial activity*. *See* Sec. Am. Compl. ¶¶ 37-60. Rather, the Lanham Act claims are based on two factually deficient allegations. First, Lancelot alleges that D'Amico purportedly told an unidentified "builder" that "there WILL be a Faire on the property; it just might not be called King Richard's Faire." *Id.* at ¶ 14. Lancelot pleads no facts to support how this purported verbal, highly speculative, hearsay statement necessarily refers to the "Faire" (meaning King Richard's Faire) versus the generic word "fair," which could describe any number of public events or exhibitions relating to any number of purposes or themes. Indeed, in January 2025, the parties were still negotiating renewal of the Lease. If the parties successfully entered into a lease, King Richard's Faire then *would* be on the property, as D'Amico allegedly stated. If the lease negotiations were unsuccessful, there would have been nothing to restrict D'Amico from placing another fair on his property. Moreover, there is no allegation that D'Amico has ever advertised, marketed, or offered any fair or any other of his goods or services under any mark or other designation on the Premises. Indeed, in the proposed agreement filed

with the Court, D'Amico expressly – and voluntarily – agreed he was not operating a Renaissance Festival on the Premises this year. Dkt. 17 at Exh. 1. At bottom, use of a generic word in an isolated statement to a single individual to describe what may take place on D'Amico's unrestricted property does not constitute anything close to sufficient use in commerce on or in connection with any good, service, or commercial activity within the meaning of the Lanham Act. *See* 15 U.S.C. §§ 1114 and 1125(a).

Second, Lancelot alleges that it "discovered that . . . on January 28, [2025], while lease negotiations were still ongoing, someone registered a new entity called 'Camelot Renaissance Village, Limited Partnership' . . . with the Secretary of the Commonwealth of Massachusetts and listed D'Amico's niece, Elisa D'Amico, . . . as the registered agent" and includes a screenshot from the Corporation Division's database. Sec. Am. Comp. at ¶ 18. As an initial – and dispositive – matter, it is well established that mere act of forming a corporate entity does not – by itself – constitute use of a mark in commerce on or in connection with goods or services. *See, e.g.*, *Enea Embedded Tech., Inc. v. Eneas Corp.*, No. 08-CV-1595 (PHX) (GMS), 2009 WL 648891, *7 (D. Ariz. Mar. 11, 2009); *Crown Realty & Dev., Inc. v. Sandblom*, No. 06-CV-1442 (PHX) (JAT), 2007 WL 177842, *2 (D. Ariz. Jan. 22, 2007); *Hancock Park Homeowners Ass'n Est. 1948 v. Hancock Park Home Owners Ass'n*, No. 06-CV-4584 (SVW) (SSX), 2006 WL 4532986, at ** 2, 5 (C.D. Cal. Sept. 20, 2006).

Moreover, Lancelot is quick to assert – without any factual support – that registration of the Limited Partnership "is proof that D'Amico was laying the groundwork to usurp Lancelot's business." Sec. Am. Compl. ¶ 20. Lancelot only needed to scroll further into the corporate record and click on "View Filings" to access the publicly available "Certificate of Limited Partnership" for Camelot Renaissance Village, which states that the purpose of the partnership is:

> to engage in investment in, and ownership of leasehold interest in real estate and interests therein, including buying, acquiring, owning, leasing, operating, selling, financing, refinancing, disposing of and otherwise dealing with interests in real estate, directly or indirectly through joint ventures, partnerships or other entities, including without limitation, the redevelopment or leasing of certain real estate located in Carver, Massachusetts . . .

*See* Declaration of Gina M. McCreadie at ¶¶ 3-4 and Exh. 1.[4]  There is no reference in this stated purpose to D'Amico running or operating a Renaissance fair of any kind.  *See Pereyra*, 148 F. Supp. 3d at 141-142 (finding on a motion to dismiss, because the operative contract was properly before the court, it was not bound by the plaintiffs' interpretation to support its allegations); *Correa de Jesus*, 923 F.2d 840 (unpublished) ("[w]here an exhibit negates the allegations of the pleading to which it is attached, a court is not required to credit the unsupported allegations" and "where the exhibit reveals facts which foreclose recovery as a matter of law, dismissal is appropriate").  Lancelot should be admonished for ignoring publicly available information that directly contradicts its conclusory allegations.

Moreover, the allegations in Counts I and II of the Amended Complaint either concede that D'Amico is not using any mark or other designation in commerce on or in connection with any goods or services or otherwise relies on highly legal conclusions or unsupported naked factual assertions that the Court need not consider.  *See Soto-Torres*, 654 F.3d at 156 (the Court need not "accept the complaint's legal conclusions or naked assertions devoid of further factual enhancement").  For example, in Count I, Lancelot alleges that "D'Amico is insinuating to

---

[4] Based on Lancelot citing the Secretary of the Commonwealth of Massachusetts' Corporations Division database entry for Camelot Renaissance Village, L.P., Sec. Am. Compl. ¶ 18, the Court may consider the publicly available Certificate of Incorporation available on the same entry.  *See Samia Companies LLC v. MRI Software LLC*, 898 F. Supp. 2d 326, 344 (D. Mass. 2012) (when "a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that . . . document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)" (citations omitted)).

consumers that D'Amico's faire originates, is approved by, is licensed by, or is otherwise affiliated with the King Richard's Faire." Sec. Am. Compl. ¶ 43. Not only are there no factual allegations in the Amended Complaint to support this legal conclusion, but there are no allegations whatsoever to support that D'Amico is using any mark or other designation in connection with a fair of any kind as part of this "insinuation." Lancelot goes on to allege "*[e]ven if* D'Amico uses the name 'Camelot Renaissance Village, L.P.,' which use at the Premises is a confusingly similar designation. . .," *id.*, thereby *conceding* that D'Amico is not making use in commerce of this name or any mark or other designation.

Count II also alleges wholly unsupported legal conclusions, including, for example, "[D'Amico] wrongly appropriated the Trademarks by representing to others that he will be running the King Richard's Faire," and "D'Amico's unauthorized use of the Trademarks falsely indicates to consumers that D'Amico's renaissance faire originates from; is approved, sponsored, or licensed by; or is affiliated or otherwise associate[d] with Lancelot or its King Richard's Faire." *Id.* at ¶¶ 53 and 56. Again, there is no factual basis for these conclusory legal assertions, let alone any allegation that D'Amico has made any use of a mark or other designation in commerce on or in connection with any fair. Further, an alleged statement by D'Amico that there will be a King Richard's Faire does not give rise to a claim for trademark infringement – the use of King Richard's Faire refers to Lancelot's faire and not to a separate fair offered by D'Amico. Accordingly, the Court should dismiss the Lanham Act Claims – Counts I and II – pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

III.    **ONCE THE LANHAM CLAIMS ARE DISMISSED, THERE IS NO ORIGINAL FEDERAL JURISDICTION AND THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE REMAINING STATE LAW CLAIMS.**

A.    **The Court Should Decline to Exercise Jurisdiction Over the Remaining State Law Claims Under 28 U.S.C. § 1367.**

"Pursuant to 28 U.S.C. § 1367(c)(1), a federal court may decline to exercise supplemental jurisdiction over a claim arising under state law 'if the district court has dismissed all claims over which it has original jurisdiction.'" *Howard v. Andover Pub. Sch.*, No. 23-CV-12177 (LTS), 2024 WL 1236244, at *3 (D. Mass. Mar. 5, 2024) (quoting 28 U.S.C. § 1367(c)(1)); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[i]t has consistently been recognized that pendant jurisdiction is a doctrine of discretion, not of plaintiff's right"). In so doing, "a district court must exercise 'informed discretion' when deciding whether to assert supplemental jurisdiction over state law claims . . . consider[ing] 'concerns of comity, judicial economy, convenience and fairness.'" *Santana-Vargas v. Banco Santander Puerto Rico*, 948 F.3d 57, 61 (1st Cir. 2020) (citations omitted). Ultimately, "[a court's] decision is a 'pragmatic and case-specific' one." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012) (citations omitted). Importantly, "the First Circuit has held that 'the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.'" *Howard*, 2024 WL 1236244, at *3 (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims"). The decision whether to exercise supplemental

jurisdiction under 28 U.S.C. § 1367 lies within the broad discretion of the Court. *Vera–Lozano v. Int'l Broadcasting,* 50 F.3d 67, 70 (1st Cir.1995).

Courts in this judicial district routinely decline to exercise supplemental jurisdiction over remaining state law claims when the federal claims giving rise to original jurisdiction are dismissed on a motion to dismiss. *See*, *e.g.*, *StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 742 F. Supp. 3d 133, 144 (D. Mass. 2024) ("[h]aving dismissed all claims over which the court has original jurisdiction [on motion to dismiss] . . . the court will decline to exercise supplemental jurisdiction over plaintiffs' state-law claims"); *Howard*, 2024 WL 1236244, at *3 (declining to exercise supplemental jurisdiction over state law claims when federal claims dismissed on motion to dismiss); *Montrond v. City of Brockton*, No. 22-CV-10886 (DJC), 2023 WL 2391699, at *5 (D. Mass. Mar. 7, 2023) (declining to exercise supplemental jurisdiction "[g]iven the early juncture in this case, at the motion to dismiss stage, and the dismissal of all of the claims over which the Court has original jurisdiction and having make the appropriate considerations, particularly as to comity . . ."); *Chaturvedi v. Siddharth*, No. 20-CV-11880 (FDS), 2021 WL 664129, at *8 (D. Mass. Feb. 19, 2021) (declining to exercise supplemental jurisdiction over state law claims where all federal claims dismissed on motion to dismiss); *Ryan v. Alzaim*, 20-CV-11424 (ADB), 2021 WL 1313560, at *5 (D. Mass. Apr. 8, 2021) (stating same); *Carr v. Town of Mashpee by Bd. of Selectman*, 574 F. Supp. 3d 13, 18 (D. Mass. 2021) (declining to exercise supplemental jurisdiction over state law claims where the litigation remains in its "nascent stages" and no discovery has taken place).

Here, once the Lanham Act Claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. This case is in its infancy. No discovery has been served or taken. The Court has not scheduled a date for the initial scheduling

conference. Further, as detailed below, the remaining state law claims are deficient and should also be dismissed on their merits. *See MSP Recovery Claims, Series LLC v. Warner Chilcott PLC*, No. 18-CV-10274 (ADB), 2019 WL 1333269, at *7 (D. Mass. Mar. 22, 2019) (declining to exercise supplemental jurisdiction over remaining state claims where "the case is still in the early stages of litigation," no discovery has been served or taken, and "the [c]ourt likely would require further amendment of the complaint before it could resolve all of the state law claims"). Accordingly, in the interests of judicial economy, convenience, fairness, and comity, because there is no original jurisdiction, the Court should decline to exercise supplemental jurisdiction and dismiss the remaining state law claims.

**B.    The Court Has No Jurisdiction Over the Remaining State Law Claims Under 28 U.S.C. § 1338(b) or Should Otherwise Decline to Exercise Jurisdiction.**

Under Section 1338(b), "[t]he district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition *when joined with a substantial and related claim under the . . . trademark laws*." 28 U.S.C. § 1338(b) (emphasis added); *see Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 699 n.2 (7th Cir. 1989); *Bridgeman Art Libr., Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 431 (S.D.N.Y. 1998) (Section 1338(b) jurisdiction "is conditioned on a viable . . . trademark claim arising under United States law"). Here, once the Lanham Act Claims are dismissed, there is no "substantial claim" under the Lanham Act. Moreover, the remaining state law claims do not assert a claim for unfair competition. *See* Sec. Am. Compl. ¶¶ 61-87. Under these circumstances, the Court should find that there is no Section 1338(b) jurisdiction over the remaining state law claims.

Even if the Court were to find some basis to retain Section 1338(b) over any of the remaining state claims, "under § 1338(b)[,] a district court has discretion to dismiss pendent state claims when the federal claim is dismissed prior to trial." *Dovenmuehle*, 871 F.2d at 699 n.2

(citing *Jason v. Fonda*, 526 F. Supp. 774 (S.D. Cal.), *aff'd*, 698 F.2d 966 (9th Cir.1981); *Pate Co. v. RPS Corp.*, 685 F.2d 1019, 1026 (7th Cir.1982) (whether to exercise the pendent jurisdiction under Section 1338(b) is within the court's discretion)); *see Verdegaal Bros. v. Union Oil Co. of Cal.*, 750 F.2d 947, 950 (Fed. Cir. 1984) ("[u]nder 28 U.S.C. § 1338(b), as with suits based on diversity, jurisdiction of pendent claims in the district court does not compel exercise of that jurisdiction [because] 'pendent jurisdiction is a doctrine of discretion, not of plaintiff's right'" (quoting *Gibbs,* 383 U.S. 715, 726 (1966)).  Accordingly, for the same reasons that the Court should decline to exercise jurisdiction under Section 1367, the Court should also decline to exercise jurisdiction under Section 1338 and dismiss the remaining state law claims.

## IV.    IF THE COURT EXERCISES JURISDICTION OVER THE STATE LAW CLAIMS, THEY SHOULD BE DISMISSED UNDER RULE 12(b)(6).

In the unlikely event that the Court decides to exercise jurisdiction over the state law claims after dismissal of the Lanham Act Claims, such claims should all be dismissed under Rule 12(b)(6):

### A.    The Tortious Interference with Business Relationships Claim (Count IV) Should Be Dismissed for Failure to Sufficiently Plead any Element.

The Court should dismiss Lancelot's claim for tortious interference with business relationships (Count IV), Sec. Am. Compl. ¶¶ 71-78, under Rule 12(b)(6) for failure to sufficiently plead any element of this claim.  The elements of tortious interference with business relations include:  "'(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages.'"  *Karter v. Pleasant View Gardens, Inc*., 248

F. Supp. 3d 299, 314 (D. Mass. 2017) (quoting *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 668 N.E.2d 333, 338 (1996)).

Here, Lancelot's tortious interference with business relations claim fails to identify:  (1) the purported "ongoing business relationships;" (2) "third-party builders, vendors, performers, insurers, and artisans" with which Lancelot purportedly had these unidentified business relations; (2) the purported fraudulent misrepresentations D'Amico purportedly knowingly made to such unidentified entities/persons; (3) any facts to support that D'Amico's interference was improper in motive or means; and/or (4) any facts to support that Lancelot was actually harmed by such purported interference.  *See DeVona v. Zeitels*, No. 13-CV-10952 (IT), 2016 WL 4926413, at *2 (D. Mass. Sept. 14, 2016) ("[a] claim of tortious interference with business relations that is not supported by any evidence of a specific business relation is 'purely speculative' and therefore insufficient"); *Katin v. Nat'l Real Estate Info. Servs., Inc*., No. 07-CV-10882 (DPW), 2009 WL 929554, at *9 (D. Mass. Mar. 31, 2009) (dismissing interference claim where the alleged prospective business relationships before it were "broadly" and "vaguely defined").

Lancelot's newly asserted allegations relating to the move-out does not rescue this claim from dismissal.  *See* Sec. Am. Compl. ¶¶ 76-77.  Lancelot never identifies, for example, the "vendors and artisans" at issue or how or why it was improper – in motive or means – for D'Amico to place reasonable restrictions on Lancelot or its vendors to enter D'Amico's Premises.  At the time of the move-out, Lancelot held no lease to be on the Premises and D'Amico reasonably and understandably could not permit Lancelot or its vendors unfettered, round-the-clock, unsupervised access to the Premises.  *Boxcar Media, LLC v. Redneckjunk, LLC*, 345 F. Supp. 2d 76, 78 (D. Mass. 2004) (granting motion to dismiss where defendants failed to "specify what business relationship was affected, whether the Plaintiffs knew about any such

16

relationship, what improper means were used to interfere with it or any advantage the [d]efendants lost as a result").  Scheduling dates and times with Lancelot to access D'Amico's property was a reasonable, orderly approach to moving out, and, indeed, one to which Lancelot itself agreed.  Dkt. 12.  Accordingly, the Court should dismiss the tortious interference with business relations claim under Rule 12(b)(6).

### B. The Tortious Interference with Contractual Relations Claim (Count V) Should Be Dismissed for Failure to Sufficiently Plead any Element.

Similarly, Lancelot's claim for tortious interference with contractual relations (Count V), Sec. Am. Compl. ¶¶ 79-84, should be dismissed under Rule 12(b)(6) for failure to sufficiently plead any element of this claim.  "The elements of a claim for tortious interference with a contractual relationship are (1) a contract between plaintiff and a third party; (2) defendant knowingly induced the third party to break the contract; (3) defendant's interference was improper in motive or means; and (4) plaintiff was harmed by defendant's act."  *Curley v. Softspikes, LLC*, No. 09-CV-11451 (RWZ), 2010 WL 2545611, at *3 (D. Mass. June 21, 2010) (citing *Alba v. Sampson*, 690 N.E.2d 1240, 1243 (Mass. App. Ct. 1998)).

Here, Lancelot fails to identify:  (1) any contract purportedly interfered or the identity of the third party to the contract; (2) any facts to support that D'Amico's knowingly induced these unnamed third parties to purportedly break unidentified contracts with Lancelot; (3) any facts to support that D'Amico's interference was improper in motive or means; and/or (4) any facts to support that Lancelot was actually harmed by such purported interference.  *See Curley*, 2010 WL 2545611, at *3 (granting motion to dismiss tortious interference claim where "[p]laintiffs make only the conclusory allegation that [d]efendants contracted directly with unidentified parties who otherwise would have contracted with Curley" and "[t]here is no mention of a contract between

plaintiff and a third party or even of negotiations of such a contract"). Thus, the Court should

also dismiss the tortious interference with contractual relations under Rule 12(b)(6).

### C.   The 93A Claim (Count III) Should be Dismissed Because It Is Derived from Other Deficient Claims and Based on Conclusions, Not Properly Pled Facts.

Lancelot's 93A claim, Sec. Am. Compl. ¶¶ 61-70, should be dismissed under Rule

12(b)(6) for multiple reasons. "To sustain a Chapter 93A claim, the conduct must lie 'within at

least the penumbra of some common-law, statutory or other established concept of unfairness,'

or rise to the level of immoral, unethical, oppressive or unscrupulous, and result in substantial

injury to competitors or other business people." *ADH Collision of Bos. Inc. v. Wynn Resorts*

*Ltd.*, No. 19-CV-10246 (RGS), 2020 WL 3643509, at *4 (D. Mass. July 6, 2020) (citation

omitted). "[T]he conduct must reach a level of rascality that would raise [the] eyebrow of

someone inured to the rough and tumble of the world of commerce." *Id.* (citations omitted).

"The SJC has clearly articulated the standard that if a Chapter 93A claim is 'derivative of' other

claims which fail as a matter of law, the Chapter 93A claim 'must also fail.'" *McCabe v. Ford*

*Motor Co.*, No. 23-CV-10829 (FDS), 2025 WL 953064, at *32 (D. Mass. Mar. 28, 2025)

(citing cases). Indeed, "[w]here a 93A claim is 'based on the same economic theory of injury

and the same alleged set of facts' as another, such that they are 'factually and legally

intertwined,' the claims 'should survive or fail under the same analysis.'" *Id.* (quoting

*Iannachino v. Ford Motor Co.*, 451 Mass. 623, 634-35 (2008)) (granting motion to dismiss

derivative 93A claim where common law claims were dismissed). To the extent that Lancelot's

93A claim relies on purported misrepresentations, "[t]he 'heightened pleading requirement' of

Fed. R. Civ. P. 9(b) applies to Chapter 93A claims." *Engren v. Johnson & Johnson, Inc.*, No.

21-CV-10333 (RGS), 2021 WL 4255296, at *6 (D. Mass. Sept. 17, 2021) (citations omitted)

(93A claim based on a misrepresentation "deficient under the heightened pleading standard

because it does not specify 'the time, place, and content of [any] alleged false representation'"). Furthermore, conclusory allegations of a 93A violation without sufficient factual support results in dismissal of the claim.  *See*, *e.g.*, *Engren*, 2021 WL 4255296, at *6; *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515-16 (1st Cir. 1988) (dismissal of 93A claim affirmed where "there was no factual predicate in the second amended complaint to suggest that [defendant's] conduct trenched near to – let alone crossed – that line" of behavior actionable under 93A).  "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a 93A violation is a question of law." *ADH Collision of Bos. Inc.*, 2020 WL 3643509, at *4.

Here, Lancelot's conclusory chapter 93A claim based on D'Amico's purported attempts to "replicate and misappropriate the King Richard's Fair brand," "falsely assuring various individuals that a 'Faire' will continue at the location," and "telling multiple Town of Carver officials that he would be operating 'King Richard's Faire'" to "unfairly compete using Lancelot's own goodwill and business model," Sec. Am. Compl. ¶ 65, is wholly derivative of its failed Lanham Act Claims, and therefore fails as a matter of law.  *See McCabe*, 2025 WL 953064, at *32.  In addition, Lancelot's asserted 93A violation based on D'Amico's allegedly "fraudulently misrepresenting his intentions to manipulate lease negotiations to gain leverage and obstruct and sabotage the tenant's business," *id.*, is highly conclusory, not supported by sufficient factual allegations, and fails to meet the heightened pleading requirements of Rule 9(b) because Lancelot fails to plead the who, what, where, when, or the specific substance of any purported misrepresentations.  *See Engren*, 2021 WL 4255296, at *6.  Finally, Lancelot's asserted violation of chapter 93A based on D'Amico purportedly "obtaining access to Lancelot's confidential and proprietary information in an improper manner" and "attempt[s] to use the

Lease and his resultant leverage over Lancelot to force Lancelot out of business and steal its customers," *id.* at ¶¶ 65-66, is wholly conclusory and fails to plead any factual allegations to support, for example, the existence of any confidential or proprietary information, the basis for how D'Amico would know that such information was confidential or proprietary, why or how such attempted access was done in an improper manner, whether Lancelot is out of business or lost customers, or how D'Amico could have purportedly forced Lancelot out of business or how he supposedly stole its customers. *See Engren*, 2021 WL 4255296, at *6; *Gooley*, 851 F.2d at 515-16. Thus, for each of these reasons, the 93A claim should be dismissed under Rule 12(b)(6).

> **D.    The Permanent Injunction Claim (Count VI) Should Be Dismissed Because Injunctive Relief Is a Remedy, Not a Separate Cause of Action.**

Finally, Lancelot's separate request for a permanent injunction (Count VI), Sec. Am. Compl. ¶¶ 85-87, should be dismissed because "[a] request for injunctive relief is not a separate cause of action. . . .  [R]ather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts." *Milligan v. GEICO Gen. Ins. Co.*, No. 20-CV-3726, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) (summary order); *see*, *e.g.*, *Bordes v. Deveaux*, No. 23-CV-7430 (JPC) (JW), 2025 WL 831697, at *2 (S.D.N.Y. Mar. 14, 2025). While D'Amico disputes that Lancelot is entitled to any injunctive relief, to the extent it is plead as a separate cause of action, the Court should dismiss this claim pursuant to Rule 12(b)(6).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Lanham Act Claims (Counts I and II) under Rule 12(b)(6), find no jurisdiction under 28 U.S.C. § 1338 to hear the remaining state law claims, decline to exercise jurisdiction under 28 U.S.C. §§ 1367 or 1338 over the remaining state law claims, and to the extent the Court decides to exercise jurisdiction over the state law claims – which it should not – dismiss such state law claims under Rule 12(b)(6).

May 6, 2025

                                  Respectfully submitted,

                                  ALPHONSE A. D'AMICO, SR.,
                                  Individually and as Trustee of the
                                  Renaissance Nominee Trust,

                                  By his counsel,

                                   */s/ Stephen M. LaRose*
                                  Stephen M. LaRose (#654507)
                                  Gina M. McCreadie (#661107)
                                  NIXON PEABODY LLP
                                  53 State Street
                                  Exchange Place
                                  Boston, MA 02109
                                  617-345-1000
                                  slarose@nixonpeabody.com
                                  gmccreadie@nixonpeabody.com

## CERTIFICATE OF SERVICE

    I, Stephen M. LaRose, hereby certify that this memorandum of law, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 6, 2025.

                                  */s/ Stephen M. LaRose*
                                  Stephen M. LaRose